***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the Deputy Commissioner. The Full Commission enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 8 May 2002 as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer on 31 July 1998 and 3 March 2000.
3. The Hartford is the carrier at risk.
4. Plaintiff's average weekly wage is to be determined by an Industrial Commission Form 22.
5. Plaintiff's medicals regarding these claims are admitted into evidence as Stipulated Exhibit # 2. These include:
Laurinburg Family Practice;
Scotland Orthopaedics; and
Physical Therapy Notes.
6. Stipulated Exhibit # 3 includes Forms and letters from Industrial Commission File No. 856842. The following Forms are included: 18, 19, 60, 28B(last medical paid 1/19/01), 33 and 33R.
7. Stipulated Exhibit # 4 includes Forms and letters from Industrial Commission File No. 080637. The following Forms are included: 61, 33, 28B and 33R.
8. Plaintiff's Responses to defendant's Discovery are admitted into evidence as Stipulated Exhibit # 5.
9. Defendant's Responses to plaintiff's Discovery are admitted into evidence as Stipulated Exhibit # 6.
10. The Form 22 with respect to the July 1998 injury is admitted into evidence as Stipulated Exhibit # 7.
11. The Form 22 with respect to the 3 March 2000 alleged injury is admitted into evidence as Stipulated Exhibit # 8.
12. The issues to be determined by this hearing are whether plaintiff sustained a compensable change of condition from the 31 July 1998 compensable injury; and, or, whether plaintiff sustained a compensable injury on 3 March 2000; and, if so, what, if any, benefits is she entitled.
 ***********
Based upon the entire evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 31 July 1998 plaintiff sustained a compensable injury to her lower back while employed as a cashier/cook for defendant-employer. She had just began work with defendant-employer earlier that month. Plaintiff initially continued working but eventually sought treatment from Dr. James Currin, at Laurinburg Family Practice, on 12 August 1998. Dr. Currin was her treating family physician. The diagnosis was lumbrosacral strain.
2. When plaintiff's back pain did not improve Dr. Currin referred plaintiff for an orthopaedic evaluation with Dr. Paul Rush at Scotland Orthopaedics. Dr. Currin kept plaintiff out of work pending the evaluation.
3. Plaintiff saw Dr. Rush on 2 September 1998. Plaintiff had pain in her lower lumbar area but no significant radicular pain or numbness into her lower extremities and no bladder or bowel problems. X-rays revealed degenerative disc disease at LS-S1 with degenerative osteophytes at L5 and S1 as well. Dr. Rush diagnosed plaintiff with an exacerbation of chronic lower back pain with pre-existing degenerative disc disease and degenerative arthritis of the lower spine with no evidence of acute injury.
4. Plaintiff continued conservative treatment by Dr. Rush and was released to light duty. Plaintiff returned to work on 21 September 1998 with light duty restriction of no lifting greater than ten pounds (10 lbs.). Dr. Rush released plaintiff from his care on 30 October 1998 with no restrictions at which time plaintiff was at maximum medical improvement.
5. When plaintiff was injured on 31 July 1998, she immediately reported the injury to defendant-employer, who completed a Form 19. Defendant accepted the injury pursuant a Form 60 and paid all appropriate indemnity and medical benefits. These benefits included payment of temporary total disability benefits from 12 August 1998 through 7 October 1998.
6. After being released by Dr. Rush in October 1998, plaintiff continued to treat with Dr. Currin on a periodic basis for various ailments and conditions other than low back pain, including nasal congestion and dysergia. From the date of her release by Dr. Rush until the alleged 3 March 2000 injury, plaintiff saw Dr. Currin six (6) times. Plaintiff complained of lower back pain only once on 12 August 1999 and did not relate it to the 1998 slip and fall. Upon examination by Dr. Currin, plaintiff's back was unchanged in 1999 as when he first examined her back on 12 August 1998.
7. On 3 March 2000 plaintiff was working the first shift for defendant-employer in the cafeteria at Abbot Laboratories. At approximately 6:00 am that day plaintiff was carrying cases of soda via a dolly to stock a vending machine. Some of the cases fell off of the dolly.
8. Cherry Ray and Lucy Pugh, employees of Abbot Laboratories, saw the incident with the sodas. Both helped plaintiff pick them up. Plaintiff did not mention she hurt her back and plaintiff did not appear to be in any pain at the time. Plaintiff did not call for her supervisor while Ms. Ray or Ms. Pugh were present.
9. Plaintiff did not report that she had injured her back to her supervisor, Janice Pruett, her supervisor's assistant, Vanessa Bostic, nor any other representative of defendant-employer on 3 March 2000 or any day thereafter. The defendant-employer did not become aware of plaintiff's alleged injury of 3 March 2000 until it was notified by the defendant-carrier of the claim shortly after plaintiff filed the Form 18 in November 2000.
10. Plaintiff did not return to work after 3 March 2000 and initially indicated that she was out of work due to sinus and other respiratory problems. Although the plaintiff gave defendant-employer a physician's note dated 5 April 2000 indicating that she was incapable of working due to lumbar strain, the plaintiff did not report injuring her back at work on 3 March 2000. The plaintiff was ultimately terminated in late April when it was determined plaintiff was not returning. The plaintiff has not returned to work with any employer since 3 March 2000.
11. Plaintiff contacted defendant-carrier on a couple of occasions in the months following her 1998 injury. Both times she spoke with Carol Hubach, an adjuster. On 17 May 2000 and 9 June 2000 plaintiff spoke with Ms. Hubach about the condition of her lower back, but did not mention any alleged accident of 3 March 2000.
12. Plaintiff saw Dr. Currin on 24 March 2000, 27 March 2000 and 3 April 2000. On 24 March 2000 plaintiff complained only of nasal congestion with no mention of lower back pain. On 27 March 2000 the plaintiff followed up for asthma with complaints of wheezing but no back pain complaints. On 3 April 2000 plaintiff saw Dr. Currin for continued cough and must have complained of back pain because she got the note that she was unable to work.
13. The first time plaintiff mentioned to a medical provider that she hurt her back in March was when she informed one of Dr. Currin's assistants on 8 May 2000. However, plaintiff did not mention this accident to Dr. Currin when she saw him that day for treatment; she only had complaints of chronic low back pain.
14. On 14 June 2000 plaintiff saw Dr. Gene Boatright for a disability determination evaluation. Plaintiff reported a history of asthma, hypertension, gout and chronic lower back pain. Dr. Boatright indicated due to her obesity and back pain plaintiff would have some impairment in her ability to stand, move about, lift and carry object but did not indicate the nature or extent of any such impairment. Dr. Boatright further indicated that the plaintiff would not have any problems with hearing, speaking, handling objects, traveling or sitting. Dr. Boatright was not deposed in connection with this matter and did not render any opinions regarding causation of plaintiff's pain.
15. Plaintiff returned to Dr. Rush on 2 October 2000. In addition to lower back pain, plaintiff also complained of bladder incontinence, but indicated this had been occurring prior to the alleged injury 3 March 2000. Dr. Rush diagnosed plaintiff with chronic low back pain with degenerative disc disease at L5-S1, which had progressed since his previous evaluation in 1998. He also recommended a MRI which revealed a central herniated disc at L5-S1.
16. Dr. Rush subsequently recommended a trial of epidural steroids or possible referral for surgical consult and released the plaintiff on 27 October 2000 pending her decision on which treatment option she wished to pursue. Plaintiff received a ten percent (10%) rating to her spine but no work restrictions. Dr. Rush was not deposed in this matter.
17. The greater weight of the medical evidence is that plaintiff did not sustain a compensable injury to her back on 3 March 2000 or suffer a change of condition from the 31 July 1998 injury. Dr. Currin gave no opinion in his deposition as to whether plaintiff sustained a back injury on 3 March 2000 or a change of condition since 31 July 1998. Likewise, plaintiff's inability to work was not causally related to her compensable 31 July 1998 injury or an alleged injury of 3 March 2000.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The greater weight of the evidence is that plaintiff suffered no substantial change of condition related to her 31 July 1998 compensable injury. G.S. § 97-47.
2. The greater weight of the evidence is that plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer on 3 March 2000. G.S. §97-2(6).
3. Plaintiff's claims, therefore, are not compensable under the provisions of the North Carolina Workers' Compensation Act. G.S. §97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits must be, and hereby is, DENIED.
2. Each side shall pay its own costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER